

U.S. Department of Justice

United States Attorney
Eastern District of New York

NB:AXB
F. #2022R00239

610 Federal Plaza
Central Islip, New York 11722

September 11, 2023

By ECF

The Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

        Re:    United States v. Lorenzo Arana
                  Criminal Docket No. 21-19 (GRB)

Dear Judge Brown:

        The government respectfully submits this letter in connection with the sentencing of defendant Lorenzo Arana, also known as "Lorenzo Blake," in the above-captioned matter. As set forth in the Presentence Investigation Report ("PSR"), the advisory Guidelines range for the defendant is 210 to 262 months' imprisonment. (PSR ¶ 91). The United States Probation Office ("Probation") has recommended a principal sentence of 240 months—the statutory maximum penalty. (Sent'g Rec.). For the reasons that follow, the government submits that a principal sentence within the range of 168 to 210 months would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

        I.        Factual Background

                A.        The Defendant's Use of Social Media to Harass and Exploit Young Girls

        This case arises from the defendant's prolific use of social media, where he branded himself the "most hated" man on Long Island. (PSR ¶ 4.) As outlined in the PSR, the defendant utilized accounts on Instagram, Tik Tok, Snapchat, YouTube, and others, through which he amassed thousands of followers, many of whom were minors. (Id.)

        The defendant used his significant social media influence to target these minors in hostile and sexually explicit ways. For example, the PSR outlines several complaints that social media users reported to the National Center for Missing and Exploited Children ("NCMEC") after encounters with the defendant (PSR ¶ 11). All of the following conduct was reported during a mere two-month period from May 27, 2020 to July 29, 2020, prior to the events charged in the indictment:

- A 15-year-old girl reported that the defendant—who the minor indicated was "known" in her area for frequently asking underage children for sexually explicit images and videos—was "constantly texting and messaging [her] on social media," asking her for explicit images of herself.

- A caller reported that the defendant had been harassing multiple girls on social media. According to those girls, after they followed the defendant's social media accounts, he somehow learned their contact information, contacted them directly, and encouraged them to cut themselves or commit suicide if they did not respond. On occasion, he threated to harm the girls himself if they did not respond. In addition, the defendant reportedly: (i) masturbated on FaceTime with a minor; (ii) approached a child who indicated s/he was 14 years old, which the defendant said was "ok"; and (iii) posted to Instagram a video of himself telling a minor to "get in [his] car" alongside text stating he was trying to kidnap girls.[1]

- A caller reported that the defendant was falsely describing himself as a 14-year-old while soliciting nude photos from, and sending nude photos to, minors.

- A caller reported that the defendant was "contacting minors who are in high school and sexually harassing them," including telling them he wanted to have sex with them.

- A caller reported that the defendant posted to Snapchat a photo of the nude breasts of a girl estimated to be 16 years old.

In addition to these complaints, on or about June 26, 2020, a teacher at a school in East Williston reported the defendant's interactions with an 11-year-old girl to the Nassau County Police Department. (PSR ¶ 53.) In particular, the teacher reported that the young girl had posted online about committing suicide after the defendant threatened to release nude photos of her. (Id.)

That same day, the Nassau County Police Department received a second complaint about the defendant from a different 11-year-old girl. (PSR ¶ 54.) The second victim told police that she had been watching the defendant's live feed on Instagram (thereby making her screenname visible to the defendant) when the defendant singled her out and asked how old she was. (Id.) After responding that she was 11 years old, the defendant sent the girl a direct message threatening to "post things" about her. (Id.) Aware of the defendant's reputation, the girl reportedly became "terrified" and directed the defendant to a secondary Instagram account, where he began messaging her. (Id.) Amid questions about the girl's appearance and whether she was "hot," the defendant continued threatening to post about the girl on his Instagram story, which she "begged" him not to do. (Id.) Despite her entreaties, the defendant did post her name to his public account;

---

[1] [redacted]

he then threatened to post "nudes" if she did not give him her telephone number. (Id.) The girl gave the defendant a fake phone number but he persisted; when she threatened to contact law enforcement, the defendant replied, "Tell me ur real number" and "fuck u bitch." (Id.)

Thereafter, on August 7, 2020, the defendant randomly sent a direct message on Instagram to a 17-year-old girl. (PSR ¶ 56.) The message simply read "yo" and the victim did not respond. (Id.) The girl then received a telephone call from the defendant, which she answered and told the defendant that she did not know him and to stop contacting her. (Id.) In short succession, the girl received numerous calls from the defendant, some of which she answered to the sound of the defendant repeatedly asking her to "hang out" and many more she ignored. (Id.) The victim was able to identify the defendant on social media, only to learn that he had not only publicly shared the victim's telephone number to his thousands of followers but had also encouraged those followers to contact the victim themselves. (Id.)

At the time of this conduct, the defendant was on probation in relation to a prior instance of criminal harassment and abuse, leading the Nassau County Police Department to issue a violation warrant for the defendant's arrest on September 9, 2020 (the "September 2020 Warrant"). (PSR ¶ 50.) Specifically, at the time of the above-described conduct, the defendant was serving a one-year probationary sentence for second-degree attempted aggravated harassment.[2] (Id. ¶ 48.) As outlined in the PSR, those charges stemmed from yet another episode in which the defendant relentlessly harassed a female victim online, causing her to fear for her safety and withdraw from her activities of daily living.

Specifically, between December 2, 2017, and December 15, 2017, the defendant made numerous attempts to contact the victim via social media, despite the victim's repeated requests that he stop contacting her and efforts to block him from doing so. (PSR ¶ 48.) The defendant responded by simply creating additional social media accounts through which he attempted contact, eventually warning the victim, "stop blocking me or do you want it the hard way?" (Id.) When the victim deleted all of her social media accounts, the defendant began contacting her friends, coworkers, classmates and employees of a local bar the victim frequented, all in an effort to gain knowledge of her address, schedule and other personal information. (Id.) At the same time, he created vulgar social media accounts containing the victim's name, such as "[victim's name]69anal," "[victim's name]likesanal6969," "[victim]checkyourdm," "[victim]likescock69," "[victim]ifuckedyou," and "lorenzo[victim]2236." (Id.) Using these accounts, the defendant commented on the social media postings of the victim's friends and posted pornographic photos. (Id.) He eventually resorted to outright threats, stating "better hope I don't see you in New York" and "I like people in pain man, Kinky fetish." (Id.) This outrageous

---

[2] It appears from the PSR that this sentence was also imposed in satisfaction of a separate arrest on December 6, 2017, in which the defendant continually contacted a female teacher at Long Beach High School and placed the woman in fear for her safety. (PSR ¶ 47.) According to the PSR, the defendant reportedly contacted the victim via email, Facebook, and Instagram and sent messages about the victim to the students in her classes. (Id.) After repeated admonitions to stay away from the school, the defendant returned and was arrested for trespassing. (Id.)

3

behavior caused the victim to take a leave of absence from her employment and seek police intervention. (Id.)

Despite the issuance of the September 2020 Warrant, the defendant's conduct continued unabated. The PSR explains that on or about September 14, 2020, he threatened to publish online a 13-year-old girl's cellphone number if she did not talk to him. (PSR ¶ 12.) When she asked him not to ("can u not"), the defendant told her "talk to me and i wont . . . ur being a bitch" and told her to "suck [his] fat cock." (Id.) When the girl told the defendant she was "literally 13 years old" and referred to him as a "pedo" for targeting her, the defendant replied "fuck u" and "[I don't care] watch." (Id.) Later that day, the defendant published the girl's cellphone number on his public Instagram story. (Id.)

Two days later, on September 16, 2020, the defendant again threatened to publicly disclose a girl's cellphone number if she did not accept his invitation to Facetime. (PSR ¶ 13.) The girl declined, specifically stating that she did not know the defendant. (Id.) He responded, "send me nudes and i wont spam you." (Id.) The girl pleaded for the defendant to "please stop," but the defendant continued issuing threats to publicly disclose the girl's phone number. (Id.)

     B.  The Defendant's Online Abuse of Jane Doe

Throughout the same time period, the defendant began communicating online with a 12-year-old girl described in the PSR as "Jane Doe #1." (PSR ¶ 3, 5.) Curious about the defendant's reputation as the "most hated" man on Long Island and large online following, Jane Doe #1 followed the defendant's Tik Tok and Snapchat accounts. (Id. ¶ 5.) After the two exchanged private messages, the defendant requested nude and sexually explicit photos and videos, which Jane Doe #1 provided via Snapchat. (Id.) She received notifications from Snapchat that the defendant saved the videos on his phone. (Id.)

On September 22, 2020, the defendant attempted to FaceTime with Jane Doe #1. (PSR ¶ 6.) When she informed the defendant that she could not take his call because she was at a salon, the defendant became angry and sent a barrage of messages threatening to disseminate sexually explicit images of Jane Doe #1 if she did not answer him. (Id.) When Jane Doe #1 still did not respond, the defendant publicly posted sexually explicit videos of Jane Doe #1, along with her contact information, to his social media followers and encouraged them to contact her directly. (Id.) He also posted the sexually explicit videos for Jane Doe #1's social media followers to see, several of whom saved screenshots from the videos. (Id.) Jane Doe #1, at 12 years old, soon began receiving a deluge of messages referring to her as a "slut" and "whore," and encouraging her to commit suicide. (Id.)

The defendant was not done. At approximately 2:00 a.m., he began messaging Jane Doe #1's close friend ("Jane Doe #2"). (PSR ¶ 7.) As depicted in the excerpt below, despite less than one week having elapsed since the defendant told a different young girl to "send [him] nudes" or he'd publicly disseminate her phone number, the defendant now expressed outrage that Jane Doe #1—again, a 12-year-old—had supposedly been conversing with another individual online:

4

| | |
|---|---|
| Lorenzo Arana: | ur friend |
| | [Jane Doe #1] is a cheating bitch |
| | And deserves the worst |
| (The defendant sent a sexually explicit video of Jane Doe #1) | |
| Jane Doe #2: | How many people did you send that to |
| Lorenzo Arana: | i'm sending that to everyone |
| | u go to [redacted] middle school |
| | rigjt |
| | why she such a slut |
| | she was talking to me |
| | and sent this guy nudes |
| | and said she loves him |
| | legit every guy told me she's a hoe |
| | i should stopped giving her chances |
| Jane Doe #2: | Oh my god |
| | Did you send it to her whole following? |
| | Hello? |
| Lorenzo Arana: | yea |
| | i did |
| Jane Doe #2: | Plz stop [I know] what she did is bad but you shouldn't spread it |
| Lorenzo Arana: | nah [I don't care] |
| | she deserves it |
| | good luck |

(PSR ¶ 7.)

5

Amid these communications, Jane Doe #2 had a FaceTime conversation with Jane Doe #1, during which a devastated Jane Doe #1 ingested a large number of pills and began losing consciousness. (PSR ¶ 9.) Within minutes, local police received an emergency call from the father of Jane Doe #2, requesting a welfare check of Jane Doe #1. (Id.) Responding officers found Jane Doe #1 unconscious in her bed, along with loose pills, two pill bottles, a firearm, and a suicide note.[3] (Id.) She was rushed to the hospital. (Id.)

While Jane Doe #1 was hospitalized, her parents found on her cellphone additional messages from the defendant and responded as follows:

| Lorenzo Arana: | yo [Jane Doe #1] |
| --- | --- |
| | yo are you there |
| | what the fuck happened |
| | [JANE DOE #1] I heard u tried doing it ot urself is that tru?!?! |
| Jane Doe #1's Mother: | This is [Jane Doe #1's] parents we don't know who u are or how u know her we need you to stop texting her she is going through a lot of we will have to block you |
| Lorenzo Arana: | i don't care put her on the phone |

(PSR ¶ 10.)

      C.      The Defendant's Unceasing Conduct Following Jane Doe's Attempted Suicide

The defendant was evidently unmoved by the experience of driving Jane Doe #1 to attempt suicide. Five days later, on September 28, 2020, he threatened to distribute sexually compromising photos he solicited from a different underage female. (PSR ¶ 14.) He told the girl "ur a bitch send me more or [the compromising material is] gonna go up." (Id.) The girl told the defendant he "could go to jail for that" because sexually explicit photos of her constituted "child pornography," but the defendant demanded that she "send me more ass" and warned that "either I see it or everyone does." (Id.)

Yet again, on October 10, 2020, the defendant initiated contact with a 14-year-old girl that he did not know. (PSR ¶ 15.) Without provocation, the defendant called this young girl a "whore," as he claimed to have received compromising photos of her from another person: "he sent me your nudes soooo." (Id.) The defendant threatened to post these secondhand images to his own expansive social media following of "23k followers" and "17l snapchat views" unless the girl agreed to meet him, warning her "don't make me post it." (Id.) Later that night, the girl's

---

[3] An image of Jane Doe #1's note to her parents is submitted herewith as Exhibit "A."

6

friend confronted the defendant and warned him not to "expose my best friend," noting that "she's 14," or else she would "have [the defendant] arrested" for "post[ing] child pornography." (Id.) The defendant replied "fuck u," claimed that he had the photos "saved," and stated they were "going up" on the internet. (Id.) When the girl's friend told the defendant that, at 14, she had been raped by a 20-year-old, the defendant accused her of "snitch[ing]" on her rapist "like a bitch." (Id.)

On October 20, 2020, Nassau County Police Officers arrested the defendant pursuant to the September 2020 Warrant. (PSR ¶ 52.) Shortly after his release from custody, the defendant recorded, and then posted online, an hour-long video in which he, among other things, communicated with several underage girls. (Id. ¶ 16.) As depicted in the video, one girl stated she was 15 years old; the defendant instructed her to say she was 18 and to text him privately. (Id.) Another girl stated she was in ninth grade (estimated 14 years old), to which the defendant, referencing his recent incarceration, remarked that the girl was "trying to send [him] back to Nassau" but then told her to privately message him anyway. (Id.) A third girl stated she was 13 years old. (Id.) The defendant claimed he was "not going to do that" because he was "not trying to have FBI in [his] house." (Id.)

### D.   The Defendant's Arrest and Post-Arrest Conduct

On or about November 6, 2020, as part of a federal criminal investigation into the defendant's conduct, agents from the United States Department of Homeland Security, Homeland Security Investigations, sought and obtained a warrant to search the defendant's residence for evidence of child exploitation crimes. See 20-MJ-946 (Sealed). That search resulted in the seizure of, among other things, five cellphones, two tablets, two gaming systems and a smart watch. (PSR ¶ 19.) As outlined with greater specificity in the PSR, those devices were determined to contain evidence of the defendant's predatory social media activities, as well as approximately 141 videos and images of girls estimated to be aged 11 to 14, including Jane Doe #1, engaged in sexually explicit activities. (Id. ¶ 20.)

On or about January 14, 2021, a grand jury in the Eastern District of New York returned a four-count indictment charging the defendant with possessing and distributing child pornography, as well as transferring obscene materials to a minor and cyberstalking. (ECF:1.) He was arrested on January 16, 2021 (PSR ¶ 21) and presented before United States Magistrate Judge Cheryl L. Pollak on January 17, 2021, whereupon he was remanded to federal custody (ECF:6).

Between March 6, 2021 and March 8, 2021, while he was housed at the Metropolitan Detention Center, the defendant used the jail's monitored email communications system to contact a friend about Jane Doe #1. (PSR ¶ 22.) In particular, the defendant used coded language to request that the friend access the defendant's social media accounts to check for contact from, or information about, Jane Doe #1. (Id.) In this regard, the defendant disguised his messages in terms of professional soccer, assigning Jane Doe #1 a moniker that combined her name with the name of a professional soccer player. (Id.) As the friend later confirmed to law enforcement, the defendant had explicitly directed that he check for Snapchat messages from Jane Doe #1 and report back any contact numbers "so I can message dem . . . u got me?" (Id.)

7

On November 21, 2022, the defendant appeared before this Court and pled guilty to distributing child pornography, namely, sexually explicit images of Jane Doe #1, to Jane Doe #2, as alleged in Count One of the Indictment. (PSR ¶ 1.)

II.     Guidelines Calculation

The Guidelines calculation, as set forth in the PSR, is as follows:

| | |
|---|---:|
| Base Offense Level (§§ 2G2.1(a), 2G2.2(c)(1)) | 32 |
| Plus: Victim Aged 12 to 16 Years (§ 2G2.1(b)(1)(B)) | +2 |
| Plus: Knowing Distribution (§ 2G2.1(b)(3)) | +2 |
| Plus: Use of a Computer to Persuade, Induce, Entice Coerce or Solicit Sexually Explicit Conduct[4] (§ 2G2.1(b)(6)(B)) | +2 |
| Less: Acceptance of Responsibility (§ 3E1.1(a), (b)) | -3 |
| Total: | 35 |

(PSR ¶¶ 34-45.)

Based upon a total offense level of 35 and Criminal History Category III, the applicable Guidelines range for the defendant is 210 to 262 months' imprisonment. (PSR ¶ 91.) The government acknowledges the correctness of this calculation. We note, however, that it differs from the Guidelines estimate contained in the parties' plea agreement, which predicted that the defendant would be situated in Criminal History Category I, rather than Criminal History Category III. The discrepancy arises from the fact that the criminal history records obtained by the government do not reflect dispositions for the defendant's prior arrests for criminal trespass and

---

[4] This enhancement applies when a defendant (i) uses a computer or interactive computer service (ii) to persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct or to solicit participation by a minor in such conduct (iii) for the purpose of producing sexually explicit material or for the purpose of transmitting such material live. See U.S.S.G. § 2G2.1(b)(6). According to the relevant application notes, this enhancement is intended to apply specifically to the use of a computer to communicate directly with a minor for the purpose of facilitating participation in sexually explicit conduct. See id. application note 6(B). In other words, this computer-related enhancement applies uniquely to child exploitation crimes where, as here, the defendant used a computer to actively victimize a minor. As such, it is unlike—and distinct from—the more common enhancement found in § 2G2.2 of the Guidelines, which applies to the use of a computer to access child pornography. See U.S.S.G. § 2G2.2(b)(6) (applying where "the offense involved the use of a computer or an interactive computer service for the possession, transmission, receipt or distribution of [child pornography] material . . .") Accordingly, the government submits that the Second Circuit's observations about the continued utility of the computer-related enhancement in § 2G2.2, see, e.g., United States v. Jenkins, 854 F.3d 181, 189 (2d Cir. 2017), do not apply with equal force here.

aggravated harassment described above. Indeed, the defendant's Pretrial Services Report, which was prepared in January 2021, likewise indicated "No Disposition noted" for both cases.

In preparing the PSR, however, Probation has evidently verified with the Nassau County District Court that the defendant was initially sentenced to one year of probation for these arrests and then, on December 8, 2020, having been returned on the September 2020 Warrant, re-sentenced to 90 days' imprisonment, giving rise to four criminal history points. (PSR ¶¶ 47-48.) In addition, it is now clear that the defendant committed the instant offense while serving that term of probation, giving rise to two more criminal history points. (Id. ¶ 50.)

III.     Argument

The Guidelines accurately reflect the seriousness of the defendant's conduct, which Probation has rightly noted goes far beyond that which is ordinarily captured by a conviction for distributing child pornography. (Sent'g Rec. 6.) On the contrary, as set forth above and in the PSR, the defendant is directly and singularly responsible for a torrent of harassment, abuse, and sexual exploitation that targeted a uniquely vulnerable population in the community: girls between the ages of 11 and 17. His conduct is nothing short of appalling—and noteworthy for its cruelty and apparent disregard for its impact on victims. There can be no legitimate dispute that the defendant bears responsibility for leaving countless young girls scared, traumatized, and in some cases convinced that life is not worth living. As this Court noted during a renewed bail hearing on July 30, 2021, other than violent crimes, it is difficult to conceive of a greater danger to the community than that which the defendant's conduct has posed.

Although the Court can and should consider the experiences of every girl affected by the defendant's actions when imposing a sentence, see, e.g., 18 U.S.C. § 3661, the account of Jane Doe #1 is at the heart of this case.



In addition to the seriousness of the offense, the Court is required to consider, among other things, the history and characteristics of the defendant, see 18 U.S.C. § 3553(a)(1), and the need for the sentence both to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant, see id. § 3553(a)(2)(B)-(C). As it relates to this defendant, these dual objectives are uniquely intertwined. Indeed, the very breadth of the defendant's conduct and history of similar actions speak directly to the need for the Court to prevent him from inflicting further harm. In that regard, the defendant has clearly been undeterred both by his prior encounters with the criminal justice system and by Jane Doe #1's attempted suicide. As explained above, well before he ever interacted with Jane Doe #1, the defendant was engaged in substantially similar conduct on a prolific scale. By September 2020, he had already been arrested in connection with his harassment and online abuse of two other victims yet showed no signs of moderating his behavior. The probationary sentence he received for that conduct proved insufficient and was revoked after a warrant was issued for continued online abuse. And as Probation has noted, after that incident the defendant "bragged online about the ease of serving time at the Nassau County Jail and continued to engage in the same conduct."[6] (Sent'g Rec 7.) He was similarly unfazed by the experience of driving Jane Doe #1 to attempt suicide. Not only did the defendant quickly return to threatening underage girls with the dissemination of sexually compromising photos but he also took steps from inside the Metropolitan Detention Center to surreptitiously inquire after Jane Doe #1.

The government acknowledges—as it has in prior proceedings—that there is apparently a clinical explanation for the defendant's struggle with impulse control, which Probation has identified as a potential factor warranting consideration at sentencing. (PSR ¶¶ 72, 75, 110.) In that vein, the PSR notes that the defendant's family members have minimized the defendant's conduct, chalking it up to confusion about his relationship to the girls he victimized (Id. ¶ 18) and comparing it to instances in which the defendant misunderstood the motivations of teenage bullies (Id. ¶ 65). Indeed, prior to the conduct charged in the indictment, the defendant's family relied on a clinical diagnosis to excuse similar behavior. (Id. ¶ 11.) But any clear-eyed

---

[5] 

[6] In the video the defendant posted to YouTube following his release from Nassau County custody, he stated, in part, "I just came back from Nassau County, bro, [and] everyone can get it, bro. Like, I'm on my bully shit. . . . Niggas don't know me, I was locked up with the murderers. All that, bro. Rapists, MS-13, Blood gang . . . Nassau County's the worst jail in the country, like, you be in your cell 23 hours a day."

assessment of the conduct described above reveals that the defendant fully understood what he was doing and understood it was illegal. That he may have had difficulty controlling certain underlying impulses does not negate his knowledge and intent.

As the PSR rightly observes, this investigation has revealed "a multitide of videos [the defendant] posted of himself and chats in which he engaged online," which provides a robust sample size of the defendant's online activities. (Sent'g Rec 6-7.) And contrary to the explanations offered by his loved ones, this evidence establishes a clear pattern in which "the defendant regularly, seemingly randomly chose followers who were viewing live streams to interact with" and then "almost immediately asked for their ages." (Id. at 7.) As described above, the defendant "acknowledged in multiple videos that he was aware that it was illegal to engage in conversations with children, but consistently invited them to message him privately or initiated such contact himself when he learned of the[ir] ages." (Id.) The evidence simply does not support the proposition that the defendant's proclivity toward 11-to-17-year-old girls was based on a confused desire for friendship or otherwise innocent. On the contrary, he "specifically targeted that age group—not for friendship, but almost immediately—seeking nude and sexually explicit images and videos" and "sent these girls videos and images of his penis and of himself masturbating." (Id.) To be sure, medical records obtained from the Bureau of Prisons reflect that the defendant "report[ed] recurring thoughts about having spoken with girl under age [sic] before incarcerated" and "[a]dmits to being aroused sexually as he ruminates about her." What's more, the defendant "used fear, intimidation, and threats to maintain compliance with his demands" and "was aware of the danger he was exposing the minor females to by publicly posting sexual images and videos along with their contact information but chose to do it anyway." (Sent'g Rec at 7.) Under these circumstances, the seriousness of the offense, the defendant's history of similar conduct, and the need for general and specific deterrence outweigh any other considerations related to the characteristics of the defendant.

IV.     Conclusion

Based on the foregoing, the government respectfully submits that a sentence within the range of 168 to 210 months is reasonable and appropriate in this case.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/ Anthony Bagnuola
        Anthony Bagnuola
        Assistant U.S. Attorney
        (631) 715-7849

cc:  Clerk of the Court (GRB) (via ECF and e-mail)
     Evan Sugar, Esq. (via ECF and e-mail)
     Lisa Langone, U.S. Probation Officer (via ECF and e-Mail)